IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
AT SOUTH BEND

MICHAEL E. MILLER
6050 TOWNSHIP RD. 21
MARENGO, OH 43334

PLAINTIFF

- VS. -

KEYSTONE RV COMPANY
C/O DAVID G. THOMAS, S/A
2642 HACKBERRY DRIVE
GOSHEN, IN 46526

DEFENDANT

CASE NO.

COMPLAINT AND JURY DEMAND

---

**PRELIMINARY STATEMENT**

1. This case involves claims asserted under the Ohio and/or Indiana Uniform Commercial Code, and the Magnuson Moss Warranty Act.

2. Jurisdiction exists with this court because a federal claim exists in which there is more than $50,000 in controversy under 15 U.S.C. 2301 *et seq*, invoking 28 U.S.C. 1331, and/or the amount in controversy is more than $75,000 and is between citizens of different states, invoking 28 U.S.C. 1332.

3. This case is about a defective 2022 Yukon 410RD fifth wheel recreational vehicle ("RV") that was built and warranted by Defendant Keystone RV Company and which proved to be a proverbial lemon that was plagued with substantial defects,

most notably the bedroom slide out leaks causing water damage in the subject RV. However, Defendant and/or its designated representatives and agents have failed to repair the RV's defects in a reasonable amount of time or a reasonable number of repair opportunities.

4. The subject RV was sold retail by Defendant's authorized retail seller, General RV Center, Inc. and acquired by Plaintiff in North Canton, Ohio. The subject RV was defective when acquired; ineffective repair attempts were made upon the subject RV by Defendant's authorized representative dealership in Ohio; the place where the relationship of the parties arose is Ohio because the warranty obligations of Defendant were received by Plaintiff with the purchase of the subject RV in Ohio and Defendant directly interacted with Plaintiff in Ohio.

5. Prior to the sale of the subject RV to Plaintiff, Defendant made arrangements for compensation of its designated representatives for the performance of warranty-covered service and repairs upon vehicles it manufactured, in accord with 15 U.S.C. 2307. In its warranty and/or owner manual for the subject RV the Defendant instructed Plaintiff that in the event of a defect Plaintiff was to notify "an authorized service center and set up an appointment to have the defect corrected" and, under 15 U.S.C. 2307, Defendant hereby designated each authorized service center who worked on the subject RV to perform the manufacturer's duties under the written or implied warranties. Subsequent to each request by Plaintiff for repair of a condition or defect on the subject RV covered by Defendant's express or implied warranties, if the repair request was approved by Defendant each such designated representative was compensated by

Defendant for the designated representative's performance of Defendant's duties.

6. Upon information and belief, Defendant controlled and/or directed the acts of each authorized repair facility who attempted to perform warranty repair work on the subject RV, by Defendant's control and direction of the speed and processing of warranty repairs and parts distribution from its factory in Indiana; Defendant controlled and directed the process by which its authorized repair facilities performed warranty-covered repairs by its acts and omissions which include but are not limited to (1) requiring authorized retail sellers of its products to apply for and be granted that right by agreeing to and proving they would and could meet and maintain Defendant's management, business, internal sales and service structuring, processes, procedures, facility location and size and characteristics, reputation, profit, sales quotas, sufficient level and quality of sales personnel staffing, departmentalization of work activities and successfully pass Defendant's periodic reviews and/or inspections of all those aspects of the retail seller's business operation and activities, including adherence to Defendant's policies and procedures related to the sale and servicing of Defendant's products and the business relationship between Defendant and its authorized retail seller and servicer of Defendant products and allowing Defendant to have access to the authorized seller and repair facility's property; and (2) by requiring authorized repair facilities to agree to and prove that they would and could meet and maintain Defendant's service management service and parts departments structuring, processes, procedures, facility location and size and equipment and service bays and characteristics, reputation, profit, sales quotas, sufficient level

and quality of administrative repair personnel staffing and training, departmentalization of work activities, purchases of specific parts and/or equipment that was supplied, provided, or recommended by Defendant for use in the servicing and warranty repair of Defendant products, and to allow Defendant to access the property and business facilities of the authorized retail sales and the authorized repair facility, and successfully pass Defendant's periodic reviews and/or inspections of all those aspects of the retail seller's business and service operation and activities, including adherence to Defendant's policies and procedures related to the sale and servicing of Defendant's products and the business relationship between Defendant and its authorized retail seller and servicer of Defendant products, including but not limited to requiring pre approval of the work, requiring photographs of work needing to be done, establishing the manner in which its authorized repair facilities would submit warranty claims for payment, limiting the reimburseable time for warranty repairs to that allowed by for specific repair tasks as stated in publications submitted to its authorized repair facilities, establishing a limited hourly rate and/or total payment amount for reimbursement for warranty repairs, refusing to pay for "comeback" warranty repairs that resulted from failure of authorized repairs to "hold up" when done the way Defendant controlled and/or directed, requiring "comeback" warranty repair claims to be identified by its authorized repair facilities when submitting warranty claims for payment, and one or more other manners of instructions, directions, limitations, in addition to other similar such requirements. Defendant further controlled and directed the operation of its

authorized retail sales and service representatives by reserving to itself the discretionary right to terminate the representative relationship of any authorized seller or servicer of Defendant's products for any reason, including if such authorized retail seller or repair facility failed, in the opinion of Defendant, to adequately adopt, employ, implement, or otherwise follow Defendant's requirement, instruction, directive, recommendation, policy, procedure, fail to meet a minimum amount of quota of retail sales or service activity and/or profit, or otherwise, etc.

7. As a result of the above, the authorized retail seller and/or every authorized repair facility that worked on the subject RV were controlled and/or directed by Defendant with regard to one or more of the acts and/or omissions which they each committed in regard to the subject RV.

## IDENTIFICATION OF PARTIES

8. Plaintiff Michael Miller is a natural person domiciled and residing in Ohio and is a consumer and buyer within the meaning of applicable laws.

9. Defendant Keystone RV Company is a corporation authorized to do business and doing business in Indiana and Ohio and was incorporated in Delaware and whose principal place of business is in Indiana and is a warrantor of the recreational vehicle that Plaintiff acquired and a supplier and a merchant.

## FIRST CLAIM: BREACH OF WARRANTY AND/OR CONTRACT

10. This case involves a defective 2022 Yukon 410RD fifth wheel recreational vehicle that Defendant warranted and contracted to warrant but which it was not able to repair within a reasonable number of chances or a reasonable amount of time and

whose warranty and/or contract Defendant breached.

11. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

12. This claim is for breach of warranty and/or contract by Defendant in Ohio and/or Indiana.

13. As a result of the above, and the allegations below, inter alia, Defendant breached its warranty and/or contract to the injury of Plaintiff.

14. At all times relevant, General RV Center, Inc., North Canton was a supplier and merchant and an authorized representative and agent of Defendant. General RV Center, Inc., North Canton was authorized by Defendant to act for it in all respects related to warranty repair work performed or attempted on the subject RV. Plaintiff acquired the subject RV from General RV Center, Inc., North Canton.

15. On or about June 30, 2023 the parties entered into a consumer transaction, in that Plaintiff agreed to acquire from the Dealer, the Dealer agreed to sell to Plaintiff, under the terms of a Bank of the West, and Defendant contracted and/or agreed to warrant the vehicle to be free from defects and/or that it would repair and/or replace any defect which it contracted and/or warranted against, the goods being a certain 2022 Yukon 410RD Fifth Wheel recreational vehicle believed to bear VIN # 4YDFYKU27NZ980725, and whose total cost was about $207,797.44.

16. Plaintiff acquired the vehicle in reliance on the existence of a written warranty and/or contract from Defendant and on advertising representations and/or

warranties of Defendant.

17. The purpose of Defendant's warranty was (a) to get the RV fixed within a reasonable amount of time and within a reasonable number of attempts if a defect arose, and (b) to give Plaintiff confidence in the reliability and quality of the RV, and (c) to give Plaintiff confidence in the Defendant's representations about the subject RV and the vehicles Defendant designed and built, and (d) to give Plaintiff confidence in Defendant itself as a responsible company that lived up to its representations, its word, and its warranties.

18. After acquiring the vehicle, Plaintiff discovered that it did not conform to the representations of Defendant inasmuch as it developed continuing malfunctions, defects and problems.

19. The defects in the RV, which were substantial and existed in the materials and workmanship caused by Keystone RV Company, included, but are not limited to Driver Side Front Slide Room Leak, among other things.

20. Defendant was notified of defects and non-conformities in the vehicle and the authorized repair facility's failed repair attempts repeatedly prior to filing this case.

21. In all respects, Plaintiff substantially, if not completely, performed his obligations under the RV's warranty from Defendant and Defendant did not perform its obligations, as set forth herein above and below.

22. Because of the contract and/or warranty-covered defects, Plaintiff notified Defendant and/or one of its authorized servicing dealers of the numerous defects and on various dates delivered the motor coach into the possession of Defendant

and/or one of its authorized servicing dealers at his cost and/or expense beginning shortly after the sale.

23. Upon taking delivery of the RV, on or about June 30, 2023, Plaintiff noticed several defects, which prompted Plaintiff to make a warranty service appointment with General RV Center.

24. On or about August 17, 2023, the RV was at General RV Center, Defendant's authorized service center, for approximately 27 days, until September 19, 2023, for a list of 14 reported defects:

- Refrigerator Door Inoperable (1x)
- A/C Shroud Inoperable (1x)
- Fireplace Remote Missing (1x)
- TV Power Box Inoperable (1x)
- Shower Wall Bowed (1x)
- Table Side Slide Out Sealer Tape Coming Off (1x)
- Sky Light Lacks Seal and Screws Showing (1x)
- Battery Box Inoperable (1x)
- Shut off Water Valve for Refrigerator Missing (1x)
- TV Back Wall Trim Fell off (1x)
- Refrigerator Lock Missing (1x)
- Cupboard Doors above Tv Loose (1x)
- Driver Side Rear Slide Out Improperly Opening/Closing (1x)
- Passenger Side Main Slide Out Cable Inoperable (1x)

25. On or about November 3, 2023, the RV was back at General RV Center for approximately 13 days, until November 15, 2023, for 4 reported defects:

- TV Power Box Inoperable (2x)
- Fireplace Remote Missing (2x)
- Shower Wall Bowed (2x)
- Passenger Side Main Slide Out Cable Inoperable (2x)

26. On or about November 30, 2023, the RV went back to General RV Center for another 44 days, until January 12, 2024, for 11 reported defects:

- Fireplace Remote Missing (3x)

- Passenger Side Main Slide Out Cable Inoperable (3x)
- Passenger Rear End Coming Apart/Wall Separating (1x)
- Front Screw Cap Moldings On Both Sides Loose (1x)
- Driver Side Middle Slide Seal Broken (1x)
- Driver Slide Front Slide (i.e. Bedroom Slide) Leak & Water Damage (1x)
- Passenger Side Second Compartment Lower Frame Bowed (1x)
- Dinette Light Broken (1x)
- Pull Put Trash Can Won't Shut Completely (1x)
- Wall Behind Theater Seats Top Panel Loose (1x)
- Island Light Glass Inoperable (1x)

27. On or about February 2, 2024, the RV was again back to General RV Center for another 29 days, until March 1, 2024, for 4 reported defects:

- Rear Right Brake Light Broken (1x)
- Bedroom Slide Leak & Water Damage (2x)
- Passenger Side Undercap Molding Loose (1x)
- Driver Side Undercap Molding Loose (1x)

28. On or about April 17, 2024, the RV was again back at General RV Center for another 56 days, until June 11, 2024, for 10 reported defects:

- Bedroom Slide Leak & Water Damage (3x)
- Passenger Side Slide Out Cable Loose (4x)
- Driver Side Rear Slide Water Damage (1x)
- Screw/Bolt Popping Through Floor Near Entry Door (1x)
- Ice Maker Valve Broken (1x)
- Bedroom Slide Cables Loose (1x)
- Screws Loose By Hitch (1x)
- Drawer Below Kitchen Sink Opening In Transit and Turning On Gas Stove (1x)
- Bedroom Carpeted Fascia Detached (1x)
- Rear Skirting Detached From Rear Cap (1x)

29. Despite being out of service five (5) times and approximately 169 within the one-year warranty period, the RV's defects were still not fixed, and Plaintiff reached out to Keystone RV about the bedroom slide still leaking via telephone on or about June 24, 2024 and via email on or about June 26, 2024.

30. Thus, on or about July 11, 2024, the RV went back to General RV Center for

another 17 days, until July 27, 2024, for 10 reported defects:

- Bedroom Slide Leak & Water Damage (4x)
- Passenger Side Decal By Front Window Peeling (1x)
- Passenger Side Decal Near Front Awning Arm Peeling (1x)
- Driver Side Rear Slide Decal Peeling (1x)
- Driver Side Front Cap in Front of Slide Decal Peeling (1x)
- Battery Leaking Acid (1x)
- Upper Doors Dented (1x)
- Rubber Coming Off Slide Cables On Driver Side Bedroom Slide Out (1x)
- Rubber Coming Off Slide Cables On Driver Side Rear Slide Out (1x)
- Driver Side Rear Slide Tape Coming off Roof (1x)

31. On or about August 13, 2024, the RV went to Keystone's factory repair service center for approximately 94 days, until November 14, 2024, for ** reported defects:

- Bedroom Slide Leak & Water Damage (5x)
- Driver Side Middle Kitchen Slide Water Damage (1x)
- Driver Side Rear Slide Tape Coming off Roof (2x)
- Passenger Side Main Slide Water Damage (1x)
- Water Damage to Wall Panel Between Bedroom Slide and Wardrobe Closet (1x)
- Water Damage to Stiles & Trim (1x)
- Water Damage to Wardrobe Side Panel (1x)
- Lower Clearance Lights Missing (1x)
- Passenger Side Decal By Front Window Peeling (2x)
- Passenger Side Decal Near Front Awning Arm Peeling (2x)
- Battery Leaking Acid (2x)
- Refrigerator Doors Dented/Scratched (1x)
- Underbelly Panel at Rear of Unit Coming Down (1x)
- Roof Sealant Voids (1x)
- Living Room Floor Crowned (1x)
- Passenger Rear End Coming Apart/Wall Separating (2x)
- Passenger Side Front Wall Expansion Joint Missing (1x)

32. After getting the RV back from Defendant, Plaintiff inspected it only to discover that the following defects were not repaired:

- Bedroom Slide Leak & Water Damage
- Passenger Dinette Slide Seal Torn
- Driver Side Middle Kitchen Slide Water Damage

- Driver Side Rear Slide Out Cable Torn

33. Further, Plaintiff discovered the following items were damaged while Defendant was either attempting to repair the RV or during transit to or from Defendant's factory service center:

- Shower Handle Broke Off
- Entry Door Trim Not Attached
- 2 of 4 Slide Toppers Sagging
- Wall Loose from Frame

34. As of the date of this filing, the subject RV remains parked at Plaintiff's house and is unrepaired.

35. After being out of service by reason of warranty repair 7 times and about 280 days since its acquisition, Plaintiff, though counsel, sent written notice on or about November 18, 2024 to Defendant regarding its breaches of warranties and the warranties' failure of essential purpose. In response, Defendant did not offer to pay the RV's diminished value or replace it; thus, the back-up remedy failed of its essential purpose.

36. In spite of Defendant's obligations, when Plaintiff complained of the inability of Defendant and its authorized warranty-repair facility to repair the subject RV, Defendant did not repair or replace or repurchase the subject RV.

37. Prior to filing this case, Plaintiff provided notice to Defendant about its failures to live up to its warranty and/or contract.

38. Instead of performing as represented, Defendant did not repair all defects in the vehicle once and for all time. In short, the defects were not repaired, Plaintiff lost all confidence in the reliability and quality of the subject RV, and Plaintiff lost all

confidence in Defendant as a company.

39. As a result, Defendant breached its express and/or implied warranties and/or contract.

40. As a result, Defendant's warranty and/or contract failed of its essential purpose and any limitations contained within the warranty and/or contract are null and void and Plaintiff is entitled to all applicable legal and equitable remedies in law.

41. In addition, any limitations contained within the warranty and/or contract are null and void and without consideration and Plaintiff is entitled to all applicable legal and equitable remedies in law.

42. Through its advertising and otherwise, Defendant represented that the recreational vehicles it built were fit for the purpose for which they were designed, that they are safe and suitable recreational vehicles for their intended designed use, reliably operable for private transportation and Plaintiff acquired the subject RV in reliance upon the belief that Defendant possessed a high degree of manufacturing skill and judgment.

43. Through its advertising and otherwise, Defendant represented that the recreational vehicles which it manufactured were of merchantable quality, fit and in proper condition for the ordinary use for which such recreational vehicles are designed and used, and Plaintiff relied on such, but the vehicle involved in this case was not, however, of merchantable quality.

44. The malfunctions and defects in the vehicle severely and substantially impaired its use and/or safety and/or value to Plaintiff.

45. Defendant's failure to timely fix all of the subject RV's defects has caused Plaintiff

to lose confidence in the reliability of the subject RV and in the ability of Defendant to repair the subject RV's defects.

46. Plaintiff provided Defendant and its authorized dealership with a reasonable number of opportunities to repair the subject RV but they have each neglected, failed, refused or otherwise been unable to do so within a reasonable amount of time or a reasonable number of attempts

47. As a result of the above facts, Defendant breached its warranties and/or contract and/or representations with respect to the subject RV.

48. One or more of the defects and malfunctions in the subject RV were covered under the terms of Defendant's warranties and/or contract, and Defendant failed to repair the subject RV, thereby diminishing the use and/or safety and/or value of the subject RV.

49. Defendant and its authorized dealership had notices of the breaches of the warranty and/or contract and the defective condition of the subject RV within a reasonable time.

50. Plaintiff suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the inability or other failure of Defendant and its authorized representatives to repair or replace the RV's defects, pay the diminished value, or replace the subject RV.

**SECOND CLAIM: MAGNUSON MOSS WARRANTY ACT**

51. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

52. This claim is for breach of express and/or implied warranties and/or contract of

warranties and/or Defendant's violation of its obligations under the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, et seq, including but not limited to its obligations to comply with its warranties and/or contract and/or to make its warranty term disclosures and its actions in full compliance with all provisions of the Warranty Act and its applicable regulations.

53. By operation of law, Defendant gave Plaintiff an implied warranty of fitness for a particular purpose and merchantability on the subject RV under the Commercial Code.

54. Plaintiff specifically allege that Defendant represented that the recreational vehicles it built were fit for the purpose for which they were designed, that they are safe and suitable recreational vehicles for their intended designed use, reliably operable for private transportation, recreational use, and travel, and Plaintiff acquired the subject RV in reliance upon the belief that Defendant possessed a high degree of manufacturing skill and judgment.

55. Plaintiff specifically allege that Defendant represented that the recreational vehicles which it manufactured were of merchantable quality, fit and in proper condition for the ordinary use for which such vehicles are designed and used.

56. In addition to the defects which plagued the subject RV and which Defendant failed to repair within a reasonable amount of time or within a reasonable opportunity to repair, or in some cases failed to repair at all, the subject RV was defective when built, defective when delivered to Defendant's authorized retail seller, and defective when delivered to Plaintiff.

57. Plaintiff specifically allege that the subject RV involved in this case was not,

however, of merchantable quality.

58. As a result of the above, among other things, Defendant has breached its obligations under the Warranty Act and/or its applicable disclosure and/or other regulations.

59. As a result of the above, among other things, Defendant breached one or more of its warranties and its obligations to make its warranty term disclosures and its actions in full compliance with all provisions of the Warranty Act and the applicable Code of Federal Regulations.

60. As a result of the above, inter alia, Defendant is in violation of the Warranty Act.

61. Plaintiff suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the above.

**WHEREFORE**, judgment is demanded against Defendant as deemed proper and lawful by the Court, cumulatively and/or alternatively as follows:

## PRAYER FOR RELIEF

1. On the first claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for more than $50,000 and in such amount as may be proven at trial;

2. On the second claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

## ALTERNATIVE PRAYER FOR RELIEF

Or, in the alternative to the damages set forth in the prayer above on any appropriate claim as proven by the evidence and allowed by law, rescission and/or revocation of acceptance plus all damages and/or statutory remedies and relief as deemed proper, equitable and lawful by the Court, for each and every violation which may be proven at trial;

**Plus** on each and every claim, expenses of suit and litigation, interest from the date of acquiring the RV, and an Order finding Plaintiff to have rescinded and/or revoked acceptance, reasonable attorney fees, plus all costs, and any and all other legal and equitable relief deemed necessary and just.

Plaintiff demands trial by jury on all claims and issues.

Respectfully submitted,

/s/ Scarlett M. Steuart
SCARLETT M. STEUART
Attorney for Plaintiff
BURDGE LAW OFFICE
8250 Washington Village Drive
Dayton, OH 45458-1850
Telephone: 937.432.9500
Fax: 937.432.9503
Email: Scarlett@BurdgeLaw.com

Z:\data\Miller, Michael E\Core Pleadings\RV Complaint FINAL 052925 ss.wpd